UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 18 Cr. 537 (SHS)

JOHN TORTORA,

Defendant. Plea

------------------------------x

New York, N.Y.
March 4, 2020
3:48 p.m.

Before:

HON. SIDNEY H. STEIN,

District Judge

APPEARANCES

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
BY: LAUREN B. POTTER
JUSTIN V. RODRIGUEZ
CHRISTOPHER J. CLORE
Assistant United States Attorneys

LEVITT & KAIZER
Attorneys for Defendant
BY: RICHARD W. LEVITT, ESQ.
NICHOLAS G. KAIZER, ESQ.

BARRY LEVIN, ESQ.
Attorney for Defendant

GERALD J. McMAHON, ESQ.
Attorney for Defendant

(Case called)

THE DEPUTY CLERK: Counsel, please state your names for the record.

MS. POTTER: Good afternoon, your Honor. Lauren Potter, Justin Rodriguez and --

THE COURT: You may be seated in the back of the courtroom, not in the front.

MS. POTTER: Lauren Potter, Justin Rodriguez, and Chris Clore for the government.

MR. LEVIN: Good afternoon, your Honor. Barry Levin. With me are Richard Levitt and Gerry McMahon for Mr. Tortora.

THE COURT: Mr. Levin, Mr. Levitt, and Mr.?

MR. LEVIN: McMahon.

THE COURT: McMahon. Please be seated.

And Mr. Tortora is present.

Do you have an application, defense?

MR. LEVIN: We do, your Honor. We're here for a change of plea.

THE COURT: All right. He wishes to withdraw his previously entered plea of not guilty and enter a plea of guilty; is that what your client intends to do?

MR. LEVIN: It is, your Honor, and with the information that's before the Court.

THE COURT: So I have a fully signed version?

MS. POTTER: You do, your Honor.

THE COURT: Ah, just put on my desk.

And is this identical to the version that was sent to me earlier yesterday?

MS. POTTER: It is, your Honor.

THE COURT: But for the signatures?

MS. POTTER: Yes.

THE COURT: All right. Administer the oath to Mr. Tortora, please.

THE DEPUTY CLERK: Please rise, raise your right hand.

(Defendant sworn)

THE DEPUTY CLERK: Please state your full name and spell your last name for the record.

THE DEFENDANT: John Tortora, T-O-R-T-O-R-A.

THE COURT: Mr. Tortora, do you understand, sir, that you are now under oath and that if you answer any of my questions falsely, your false or untrue answers may later be used against you in another prosecution for perjury or for making a false statement?

THE DEFENDANT: Yes, I do.

THE COURT: How old are you, sir?

THE DEFENDANT: 63.

THE COURT: How far did you go in school?

THE DEFENDANT: High school.

THE COURT: Did you graduate?

THE DEFENDANT: No. I'm sorry. I got my GED.

THE COURT: GED. All right. Are you able to read, write, speak, and understand English?

THE DEFENDANT: Yes.

THE COURT: English, I take it, is your native language, is that correct?

THE DEFENDANT: Yes.

THE COURT: Are you now or have you recently been under the care of a doctor or a psychiatrist?

THE DEFENDANT: No.

THE COURT: Have you ever been treated or hospitalized for any mental illness or any type of addiction, including drug or alcohol addiction?

THE DEFENDANT: No. I've not been treated for it, no.

THE COURT: In the past 24 hours have you taken any drugs, medicine, or pills or consumed any alcohol?

THE DEFENDANT: Just the medication I take every day. It's like for sugar diabetes, stuff like that.

THE COURT: All right. Anything that affects your thinking or mind?

THE DEFENDANT: No.

THE COURT: All right.

MR. LEVITT: Excuse me, Judge. I'm sorry to interrupt. Do you want him to remain standing?

THE COURT: Unless there's some problem, yes.

MR. LEVITT: Okay.

THE COURT: If he's unable to do that, then he doesn't have to.

MR. LEVITT: Thank you.

THE COURT: Is your mind clear today, sir?

THE DEFENDANT: Yes.

THE COURT: Are you feeling all right?

THE DEFENDANT: Yeah.

THE COURT: You look a little hesitant. If you're nervous, that I certainly understand.

THE DEFENDANT: I'm a little nervous, too. A little nervous, too, and I didn't sleep good last night.

THE COURT: All right. That I understand, but I want to make sure you understand what you're doing.

THE DEFENDANT: Yeah, I understand.

THE COURT: Do you have an attorney today?

THE DEFENDANT: These guys.

THE COURT: All right. That's the three gentlemen next to you?

THE DEFENDANT: Yes.

THE COURT: All right. All three of you gentlemen, do you have any doubt as to Mr. Tortora's competence to plead at this time?

MR. LEVIN: None whatsoever, your Honor.

THE COURT: Sir?

MR. LEVITT: No.

MR. McMAHON: No, your Honor.

THE COURT: All right. Now your attorney has informed me that you wish to enter a plea of guilty. Is that true? Do you wish to enter a plea of guilty, sir?

THE DEFENDANT: Yes.

THE COURT: Have you had a full opportunity to discuss your case with your attorneys and to discuss the consequences of entering a plea of guilty?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with your attorneys and their representation of you?

THE DEFENDANT: Yes.

THE COURT: On the basis of Mr. Tortora's responses to my questions and my observations of his demeanor, not only as he stands here before me today but as he has stood here before me in a variety of other conferences we've had in this case before today, I make the finding that he is fully competent to enter an informed plea at this time.

Before I accept a plea from you, Mr. Tortora, I'm going to be asking you certain questions, and those questions are intended to satisfy me that you wish to plead guilty because you are in fact guilty and that you fully understand the consequences of entering a plea of guilty. I'm going to describe to you certain rights you have under the Constitution and laws of the United States. You're going to be giving up

those rights if you enter a plea of guilty. I want you to listen to me carefully, and if you do not understand anything I'm saying or describing, I want you to stop me, and you can ask your attorney anything you want, you can ask me anything you want. My concern is to make sure that you understand what I'm saying to you and you understand what I'm asking you. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. Under the Constitution and laws of the United States, you have a right to a speedy and public trial by a jury on the charges against you which are contained in superseding information S2 18 Cr. 537. Do you understand those rights?

THE DEFENDANT: Yes.

THE COURT: If there were a trial, you would be presumed innocent, and the government would be required to prove you guilty by competent evidence and beyond a reasonable doubt. You would not have to prove you were innocent at a trial. Do you understand those rights?

THE DEFENDANT: Yes.

THE COURT: If there were a trial, a jury composed of 12 people selected from this district would have to agree unanimously that you were guilty. Do you understand those rights?

THE DEFENDANT: Yes, I do.

THE COURT: You have a right to be represented by an attorney at trial and at every other stage of the proceedings. If you are unable to afford an attorney, an attorney will be given to you at no cost to you. Do you understand those rights?

THE DEFENDANT: Yes, I do.

THE COURT: If there were a trial, sir, you would have a right to see and hear all of the witnesses against you, and your attorney could cross-examine them. You would have a right to have your attorney object to the government's evidence and offer evidence on your own behalf if you so desired, and you would have the right to have subpoenas issued or other compulsory process used to compel witnesses to testify in your defense. Do you understand all those rights?

THE DEFENDANT: Yes, I do.

THE COURT: If there were a trial, sir, you would have the right to testify if you wanted to, but no one could force you to testify if you did not want to. In addition, no inference or suggestion of guilt could be drawn if you decided not to testify at your trial. Do you understand those rights?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that by entering a plea of guilty today, you're giving up each and every one of the rights I've described to you, Mr. Tortora, that you are waiving each of those rights, and there will be no trial here?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that you have the right, sir, to change your mind right now and refuse to enter a plea of guilty? You don't have to enter a plea of guilty if you do not want to for any reason whatsoever. Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you received a copy of superseding information S2 18 Cr. 537?

THE DEFENDANT: Yes.

THE COURT: Did you discuss it with your attorneys?

THE DEFENDANT: Yes, I did.

THE COURT: Did you read it?

THE DEFENDANT: Yes, I did.

THE COURT: Did your attorneys answer any questions you may have had about that information?

THE DEFENDANT: Yes, they did.

THE COURT: Now I can read that information in open court, and you have the right to have me read it in open court, but if you don't want me to read it, sir, you can waive my reading of it, sir.

MR. LEVIN: Your Honor, on behalf of Mr. Tortora, we waive the reading.

THE COURT: All right. Mr. Tortora, is that true? Do you waive the reading of it?

THE DEFENDANT: Yes.

THE COURT: All right. Then I'm not going to read it. I accept that as a knowing and voluntary waiver of the right to have the information read in open court.

Do you understand in Count One, sir, you're charged with conspiring to obstruct an official proceeding in or about October and November 2017, in violation of 18 United States Code Section 371?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that in Count Two, you're charged with interstate transmission of wagering information from approximately 1997 up to approximately 2018, in violation of 18 United States Code Section 1084?

THE DEFENDANT: Yes, I do.

THE COURT: Now you have a constitutional right, sir, to be charged by an indictment instead of by an information. Do you understand that?

THE DEFENDANT: Yeah, I do.

THE COURT: Now do you understand that an indictment is a charge by a grand jury, but an information is simply a charge by the prosecutors? Do you understand that?

THE DEFENDANT: I do.

THE COURT: I'm going to ask my deputy to mark as Government Exhibit 1 a document entitled Waiver of Indictment, and I'm going to ask her to show you that Government Exhibit 1.

Is that your signature?

THE DEFENDANT: Yeah, yes.

THE COURT: And that form, Government Exhibit 1, states, "The above-named defendant," and that's you, "who was accused of violating 18 U.S.C. 371 and 18 U.S.C. 1084 and 2, being advised of the nature of the charges and of his rights, hereby waives in open court prosecution by indictment and consents that the proceeding may be by information instead of by indictment."

Do you understand, sir, that you waive the right to be charged by an indictment and you have consented to being charged by an information by the government?

THE DEFENDANT: Yes, I do.

THE COURT: When you waived that right, sir, did you do that voluntarily and knowingly?

THE DEFENDANT: Yes, I do. Yes, I did.

THE COURT: All right. Do you understand that if you did not plead guilty, the government would have to prove each and every part or element of the charge in Counts One and Two beyond a reasonable doubt at a trial before a jury could convict you of that count? Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Government, please state what the elements of Count One are and then the elements of Count Two.

MS. POTTER: Yes, your Honor.

As to Count One, the government would have to prove

the following beyond a reasonable doubt:

First, that two or more persons agreed to commit an offense against the United States -- here, that is the obstruction of an official proceeding;

Second, that the defendant was a party to or member of that agreement;

Third, that the defendant joined the agreement knowing of its objectives to commit an offense against the United States, and intended to join together with at least one other co-conspirator to achieve that objective; and

Fourth, that at some time during the existence of that agreement, at least one of the members performed an overt act in furtherance of the objective.

THE COURT: All right. That's Count One, correct?

MS. POTTER: That's Count One, your Honor.

THE COURT: Mr. Tortora, do you understand that those are the elements of Count One that the government would have to prove beyond a reasonable doubt?

THE DEFENDANT: Yes.

THE COURT: And in addition to the elements that the government set forth, Ms. Potter set forth, there's also a requirement on each count that venue be in the Southern District of New York. That means that an act in furtherance of the conspiracy took place in the Southern District of New York. But that aspect has to be proven by the government simply by a

preponderance of the evidence, not by beyond a reasonable doubt. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. And Ms. Potter, if you would set forth the elements of Count Two.

MS. POTTER: Yes, your Honor.

As to Count Two, the government would have to prove the following beyond a reasonable doubt:

First, that the defendant was engaged in the business of betting and wagers;

Second, that the defendant as part of that business, used or caused to be used wire communication facility to transmit, in interstate or foreign commerce, bets or wagers or information that assisted in placing of bets or wagers on any sporting event or contact;

Third, that the transmission was made between different states or interstate sites; and

Fourth, the defendant acted knowingly.

And as your Honor previously noted, we would also have to prove venue as to Count Two by a preponderance of the evidence.

THE COURT: Do you understand those elements, sir?

THE DEFENDANT: Yes, I do.

THE COURT: All right. Do you understand that the maximum possible penalty of the crime to which you are entering

a plea of guilty in Count One is five years' imprisonment; supervised release of three years; a fine of the greatest of $250,000 or twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to individuals other than you resulting from the offense; plus a $100 mandatory special assessment? Do you understand that's the maximum penalty?

THE DEFENDANT: That's the maximum penalty, yes.

THE COURT: Yes, to Count One.

THE DEFENDANT: Count One. Okay.

THE COURT: And the maximum penalty on Count Two is two years in prison; supervised release of one year; fine of the greatest of $250,000 or twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to individuals other than you resulting from the offense; plus a $100 mandatory special assessment. Do you understand that's the maximum penalty on Count Two?

THE DEFENDANT: Yes, I do.

THE COURT: Now I used the term "supervised release" in regard to what part of your sentence could be as a maximum for Count One and Count Two. Supervised release means you're going to be subject to monitoring, Mr. Tortora, upon your release from prison, and the monitoring is to be under terms and conditions that could lead to your reimprisonment without a jury trial for all or part of the term of supervised release,

and without credit for time previously served on postrelease supervision if you violate any term or condition of supervised release. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Now I also have the authority to order restitution to anyone injured as a result of your criminal conduct. Do you understand that, sir?

THE DEFENDANT: Yes. Yes, your Honor.

THE COURT: You're pleading guilty to two different counts, Count One and Count Two, in this information. Do you understand I'm going to sentence you separately on each of those two counts?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that I have the authority to order you to serve the sentences either concurrently or consecutively, meaning I can order you to serve them at the same time or I can order you to serve one after the other? Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that if I decide to run the sentences consecutively, that is, one after the other, your sentence could be a total of seven years in prison?

THE DEFENDANT: Yes, I understand that, your Honor.

THE COURT: Do you understand that if I accept your guilty plea today, sir, and determine that you are guilty, that

determination may deprive you of such valuable civil rights as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm?

THE DEFENDANT: Yes, I understand.

THE COURT: Mr. Levitt, I take it your client is a United States citizen, is that correct?

MR. LEVIN: He is, your Honor.

THE COURT: Thank you.

Under current law, there are Sentencing Guidelines that judges such as myself must use in applying the factors set forth in 18 United States Code Section 3553(a) to determine what a fair and reasonable and appropriate sentence is, sir, and one that's sufficient but not greater than necessary to meet the ends of the criminal justice system. Have you talked to your attorneys about the Sentencing Guidelines?

THE DEFENDANT: Yes, I did.

THE COURT: Did they answer your questions, if you had any?

THE DEFENDANT: Yes, they did.

THE COURT: Do you understand that I won't be able to determine what the relevant guidelines sentence is until after I receive a presentence report that's going to be completed by the probation office and you and the government and your attorneys will have an opportunity to object to any findings of

fact in that report that any of you disagree with? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And then if there are such disagreements, I ultimately will adjudicate them. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now in that connection, sir, you're going to be interviewed by the probation department. Your attorneys will be able to be there, and I want you to give them accurate and complete information because I'm going to use that report in helping me determine what an appropriate sentence is in your case. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Now even after I determine what the appropriate guideline range is, Mr. Tortora, I have the ability to impose a sentence that's based on a departure from the guidelines, either above the guidelines or below. In other words, I can sentence you to greater time in prison than that called for by the guidelines and, for that matter, a lesser time called for by the guidelines on a departure.

Yes, sir.

MR. LEVIN: Your Honor, I think my client is confused by the last statement by the Court, because the guidelines in this agreement are the maximum statutory cap of seven years.

THE COURT: All right. Yes, I saw that. They're

included in -- oh, I see. I see. What you're telling me is in this instance, because in fact as I read the plea agreement yesterday, the guidelines extend beyond the maximum statutory and therefore by law the top of the guidelines is the statutory maximum.

MR. LEVIN: The 84 months, correct.

THE COURT: What you're telling me is since that's true, I cannot depart above the statutory maximum.

MR. LEVIN: Yes, your Honor.

THE COURT: That's very true. Let me explain that to the defendant.

And government, I take it you have no objection to that.

MS. POTTER: No, your Honor.

THE COURT: All right. What your attorney has brought out, sir -- and he's very correct -- is that in this instance the guidelines that have been agreed to by the parties -- and I'm not bound by their agreement, I have an independent obligation to determine what the guidelines are, but in this agreement the parties have agreed that the guideline is capped by the statutory maximum; in other words, the law that Congress passed says that it's a five-year statutory maximum, as I told you on Count One, maximum term of imprisonment of five years, and on Count Two, there's a statutory maximum term of imprisonment of two years, and as I told you also, I can

sentence you either concurrently or consecutively. If I sentence you consecutively to the maximum Congress allows me to sentence you to, that's seven years.

THE DEFENDANT: Seven years.

THE COURT: 84 months. So quite intuitive of you to pick that up from when I was talking to you.

THE DEFENDANT: I heard --

THE COURT: Congress doesn't allow me to sentence you on Count One and Count Two to more than seven years. Is that some reassurance?

THE DEFENDANT: Yes, sir.

THE COURT: That's what the law is. Everyone agree on that, Mr. Levitt?

MR. LEVIN: Yes, your Honor.

MR. LEVITT: He's Levin; I'm Levitt.

THE COURT: Yes. We go through this every time. It's Levin and Levitt.

MR. LEVIN: I'm Abbott and he's Costello, your Honor.

MR. LEVITT: He's Levin and I'm Levitt. But I've been called worse.

THE COURT: Maybe I should deal with Mr. McMahon. That would be easier. And you're the only one who actually tried a case in front of me, I believe.

MR. McMAHON: Yes, Judge.

THE COURT: All right. We've squared that away.

So I can depart from the guidelines downward in this case if I so choose.

And even after I do that -- that is, decide what the guideline range is -- and decide whether I can depart downward because, as we've decided, at least according to what the parties think the guideline range is, I can't depart upward because the statutory maximum is within the guideline range; by law, it's the top of the guideline range -- I still have to independently apply the factors in U.S. Code Section 3553(a) to determine what a reasonable and fair and appropriate sentence is. Do you understand that?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: Okay. Now have you talked to your attorneys about how the Sentencing Guidelines function?

THE DEFENDANT: Yes, I did.

THE COURT: Now do you understand that if you're sentenced to prison, the system of parole that used to exist in the federal criminal justice system no longer exists? Parole has been abolished. So if I sentence you to a particular term in prison, you will serve that term in prison. You won't be released any earlier on parole. Do you understand that?

THE DEFENDANT: On parole, yeah.

MR. LEVIN: Parole.

THE COURT: Parole. There's parole in the state court system and there's no parole in the federal system.

THE DEFENDANT: That's right, yeah.

THE COURT: Now if you follow the rules of the institution that you're in and various other things, there's something called good time credit that accrues, and I think that's something like 49 or 51 days a year. I'm not quite sure. If you do get good time credit while you're in the federal custody of the federal Bureau of Prisons, that accrues and you'll be given credit. But there's no parole board; you're not released any earlier than the full sentence minus any approved good time. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Okay. Now do you understand that if any of Mr. Levitt or Mr. Levin or Mr. McMahon or anyone else, the prosecutors, your friends or relatives, have estimated to you what they think your sentence is going to be, or if you yourself have a belief as to what your sentence is going to be, everybody could be wrong? Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: That's because I'm the one who's going to sentence you, and I don't know what your sentence is going to be because I don't have that full report from the probation office and I haven't heard the arguments of your attorneys or the arguments of the government. And I don't know enough about you. I don't know enough about the crime. I don't know enough about your upbringing, your finances, your education, your

criminal history, if any, or any of those things. I need to understand that to apply the factors in Section 3553(a) to determine what a sentence should be in your case. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: So if the sentence that I impose on you is different from what anyone has told you it was going to be, or even if it's different from what you may expect it to be, you still are going to be bound to today's plea, sir, and you won't be able to withdraw it. Do you understand?

THE DEFENDANT: I understand.

THE COURT: Now I have a document here. It's dated March 3. It's addressed to Mr. Levin. It's eight pages long. It looks like it's signed by Ms. Potter, and Mr. Gerber.

THE DEFENDANT: Yes, I see it.

THE COURT: And I'm going to ask my deputy to mark it as Government Exhibit 2, and I'm going to ask her to show you the last page.

Is that your signature on the last page, sir?

THE DEFENDANT: Yes, it is.

THE COURT: Did you read that agreement before you signed it?

THE DEFENDANT: Yes, I did.

THE COURT: Did you discuss it with your attorneys before you signed it?

THE DEFENDANT: Yes, I did.

THE COURT: Did they answer your questions about it?

THE DEFENDANT: Yeah, a lot of times. I went over it a lot of times.

THE COURT: I'm sorry?

THE DEFENDANT: I went over it a lot of times with them.

THE COURT: All right. Good.

Did you fully understand the agreement at the time you signed it?

THE DEFENDANT: Yes, I did.

THE COURT: All right. Does that letter agreement, Government Exhibit No. 2, constitute your complete and total understanding of the entire agreement between the government, your attorneys, and yourself?

THE DEFENDANT: Yes, it does.

THE COURT: Is everything about your plea and sentence contained in this document, Government Exhibit No. 2?

THE DEFENDANT: No.

Oh, yes? Yes.

THE COURT: Well, talk to Mr. Levitt, Mr. Levin, and Mr. McMahon.

MR. LEVITT: I think the point was, you said everything with respect to the agreement, and of course it is contained here. Of course the Court will have a lot of

additional information before you're sentenced.

THE DEFENDANT: Oh, yes.

THE COURT: Oh, yes, absolutely right. Because not only am I going to receive that presentence report prepared by the probation department, but your attorneys will be able to present me whatever information they choose to do. And for that matter, the government will be able to do that as well. But what I'm asking you is, is everything about your plea and sentence in Government Exhibit 2?

THE DEFENDANT: Yes.

THE COURT: Has anything been left out? And by that I mean, are there any side deals I should know about, any agreements that aren't here?

THE DEFENDANT: No.

THE COURT: All right. Has anyone offered you any inducements or threatened you or forced you to plead guilty or to enter into the plea agreement?

THE DEFENDANT: No.

THE COURT: Do you understand that in this agreement the government has reserved its right to argue at sentencing that you were responsible for the murder of Richard Ortiz in about November 11, 1997?

THE DEFENDANT: I am not responsible for his murder at all, and I have been saying that from day one.

THE COURT: No, no.

MR. LEVITT: He's asking you whether you understand that the government can make that argument.

THE DEFENDANT: Oh, yeah, but --

MR. LEVITT: And we're permitted to say that that's untrue.

THE DEFENDANT: Yes, they can say that. I understand. But it's not true.

THE COURT: Let me make it clear. The government has reserved the right to argue that you are responsible for that murder. You are reserving the right to argue at sentencing that you were not responsible for the murder. So I will take information from both sides and arguments from both sides. Do you understand that?

THE DEFENDANT: I do.

THE COURT: All right. Now, government, I take it -- well, I shouldn't take it. Is it the government's position that the other acts set forth at the top of page 2 are also acts that the government can seek to present evidence on for my determination as to how 3553(a) factors are to be applied; and the defense, for that matter, can present evidence to the contrary?

MS. POTTER: Yes, your Honor.

THE COURT: All right. Do the defense attorneys understand that?

MR. LEVIN: Yes, your Honor. We heavily negotiated

that with the government the past several days.

THE COURT: All right. Mr. Tortora, do you understand that you have agreed to give up or to waive your right to file an appeal from the sentence and you've agreed to give up your right to collaterally attack the sentence if I sentence you to 84 months in prison or less?

THE DEFENDANT: I could -- I don't understand what you're saying.

THE COURT: All right. I'll say it again. And you can talk to your attorneys, but I will say it again. It's important that you understand.

(Mr. Levitt conferring with the defendant)

THE DEFENDANT: Oh, okay. I understand what you're saying.

THE COURT: Let me say it again, make sure you feel comfortable. That you've agreed not to appeal the sentence and you've agreed not to collaterally attack the sentence -- in other words, there's such a thing as habeas corpus -- as long as I sentence you to 84 months or 83 months or 82 months or anything less. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And as we discussed, I'm prohibited by Congress from sentencing you to more than 84 months. Your attorney pointed that out, because that's the statutory maximum on these two counts if I sentence you consecutively. Do you

understand?

THE DEFENDANT: Yes, I do.

THE COURT: All right. Do you understand you're waiving the right to assert the statute of limitations as a defense to the action against you? You're giving up your right to say: The statute of limitations has run and therefore the government can't prosecute me.

Talk to your lawyers.

THE DEFENDANT: Yeah, just a question.

THE COURT: Sure.

(Defendant conferring with his counsel)

THE DEFENDANT: Yes. Yes, your Honor.

THE COURT: All right. Counsel, are you aware of any valid defense that would prevail at trial or know of any reason why your client should not be permitted to plead guilty?

MR. LEVIN: No, I am not aware of any defense to the charges that he's pleading guilty to.

THE COURT: All right. Is there an adequate factual basis to support your client's plea to Counts One and Two today?

MR. LEVIN: There is, your Honor.

THE COURT: All right. Ms. Potter, is there an adequate factual basis in the view of the government to support Mr. Tortora's plea?

MS. POTTER: Yes, your Honor.

THE COURT: All right. Mr. Tortora, tell me now what you did in connection with Count One and Count Two that makes you guilty of committing those crimes.

MR. LEVIN: Do you need my glasses?

THE COURT: If you're going to read something, that's fine, sir. Is that what you're going to do?

THE DEFENDANT: Yeah.

THE COURT: All right. What I'm asking you is, two things. One is to read slowly, because when people are nervous and two, when they tend to read, they go faster, but I want to be able to understand what you're saying and I want the court reporter to be able to take it down accurately; and secondly, I want you to be able to tell me right now that what you're reading is in fact true. Is it? What you're about to read, is that true and accurate?

THE DEFENDANT: Yes, it is, your Honor.

THE COURT: All right. Tell me what you want to tell me that makes you guilty of Counts One and Two.

THE DEFENDANT: With regard to Count One, in or about October or November of 2017, I agreed with one or more persons to obstruct a grand jury proceeding by erasing and -- certain video recordings. This happened in the Southern District of New York, and I was aware of -- my conduct was related to a federal proceeding.

THE COURT: And did you know that what you were doing

was wrong and illegal?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Count Two, sir.

THE DEFENDANT: With regard to Count Two, between 1997 and 2018, I and one or more persons, being engaged in a sports betting business, used a telephone for interstate transmissions of information related to the business. This occurred in the Southern District of New York.

THE COURT: Was that the sports wagering business?

THE DEFENDANT: Yes, that is, your Honor.

THE COURT: And did you know that what you were doing was wrong and illegal?

THE DEFENDANT: Yes, your Honor.

THE COURT: Government, what evidence do you have against Mr. Tortora on Counts One and Two?

MS. POTTER: Your Honor, the government's evidence would consist of various witnesses, including lay witness testimony, law enforcement testimony, cooperating witness testimony, as well as email records and other documents and recordings. The evidence would establish as to Count One that in or about October and November 2017, in Yonkers, New York, the defendant agreed with at least one other person to destroy a video recording at a location on Sawmill River Road in Yonkers after receiving a grand jury subpoena for that recording.

THE COURT: And the purpose being to obstruct the proceedings?

MS. POTTER: Yes, your Honor. The evidence will further establish that from in or about 1997 up to and including in or about 2018, the defendant operated a sports gambling business in the Southern District of New York in which he and others used phones to engage in interstate transmission of information concerning bets and wagers.

THE COURT: All right. Thank you.

Mr. Tortora, how do you now plead to the charges in Count One and Count Two of superseding information S2 18 Cr. 537, guilty or in the guilty?

THE DEFENDANT: Guilty, your Honor.

THE COURT: Are you pleading guilty because you are guilty, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are you pleading guilty voluntarily and of your own free will?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Does defense counsel wish any further inquiry on this allocution?

MR. LEVIN: None at all, your Honor.

THE COURT: Does the government?

MS. POTTER: No, your Honor.

THE COURT: Mr. Tortora, because you acknowledge

you're guilty as charged, because I find you know your rights and are waiving them knowingly and voluntarily, because I find your plea is entered knowingly and voluntarily and is supported by an independent basis in fact containing each of the essential elements of the offense, I accept your guilty plea, sir, and determine you to be guilty of Counts One and Two.

I hereby set the date for sentencing at June 4, 2020, at 2:30 p.m.

I'm going to change it to 10 a.m. June 4th, 10 a.m.

All right. Mr. Tortora, I'll see you on June 4th in the morning, or any adjourned date that I set. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Thank you.

If there's nothing further, we're adjourned. I have another matter.

MS. POTTER: Thank you, your Honor.

MR. McMAHON: Thank you, your Honor.

o0o